[Cite as *Owens v. Giant Eagle, Inc.*, 2022-Ohio-192.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STEVEN T. OWENS, :

    Plaintiff-Appellant, :

                         No. 110666

    v. :

GIANT EAGLE, INC., ET AL. :

    Defendants-Appellees. :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** January 27, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-936748

---

### *Appearances:*

Nager, Romaine & Schneinberg Co., L.P.A., Jennifer L. Lawther, James D. Falvey, and Corey J. Kuzma, *for appellant*.

Matty, Henrikson & Greve L.L.C., Erin E. Hooper, and Kirk R. Henrikson, *for appellees*.

ANITA LASTER MAYS, P.J.:

## I.   Introduction and Background

{¶ 1}   This appeal is before the court on the accelerated docket pursuant to App.R. 11.1 and Loc.App.R. 11.1.  The purpose of an accelerated appeal is to allow an

appellate court to render a brief and conclusory decision. *State v. Trone*, 8th Dist. Cuyahoga Nos. 108952 and 108966, 2020-Ohio-384, ¶ 1, citing *State v. Priest*, 8th Dist. Cuyahoga No. 100614, 2014-Ohio-1735, ¶ 1.

{¶ 2} Plaintiff-appellant Steven T. Owens ("Owens") appeals the trial court's grant of summary judgment in favor of defendants-appellees Giant Eagle, Inc. ("Giant Eagle") and the Administrator of the Ohio Bureau of Workers' Compensation ("BWC").

{¶ 3} Owens filed an application for workers' compensation benefits due to an Achilles rupture injury suffered on February 1, 2020, during Owens's 6:00 a.m. to 2:00 p.m. work shift at the work premises. The BWC district hearing officer allowed the claim for a left Achilles tendon rupture on or about May 7, 2020. Giant Eagle appealed, and by a June 13, 2020 order, the staff hearing officer vacated the prior ruling and disallowed the claim.

{¶ 4} Owens appealed to the Industrial Commission of Ohio that refused the appeal by order mailed on July 2, 2020. Having exhausted the administrative remedies, Owens appealed to the Cuyahoga County Court of Common Pleas. On April 23, 2021, Giant Eagle moved for summary judgment on the ground that Owens's injury was not sustained in the course of, and arising out of, his employment. The trial court granted summary judgment on June 15, 2021. Owens appeals.

## II. Assignment of Error

{¶ 5} Owens charges that the trial court erred in granting summary judgment for Giant Eagle. We agree.

## III. Standard of Review

{¶ 6} We review an appeal for summary judgment under a de novo standard. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996); *Zemcik v. LaPine Truck Sales & Equip. Co.*, 124 Ohio App.3d 581, 585, 706 N.E.2d 860 (8th Dist.1997).

{¶ 7} "We apply the same standard as the trial court, viewing the facts in the case in a light most favorable to the nonmoving party and resolving any doubt in favor of the nonmoving party." *Thompson v. Lyndhurst*, 8th Dist. Cuyahoga No. 107695, 2019-Ohio-3277, ¶ 19, citing *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12, 467 N.E.2d 1378 (6th Dist.1983).

{¶ 8} Summary judgment shall not be rendered unless the moving party demonstrates that (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, with the nonmoving party being entitled to have the evidence construed most strongly in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Rels. Bd.*, 78 Ohio St.3d 181, 183, 677 N.E.2d 343 (1997).

{¶ 9} The party moving for summary judgment bears the burden of demonstrating that no genuine issues of material fact exist for trial. *Dresher v. Burt*,

75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). The moving party has the initial responsibility of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. *Id.* After the moving party has satisfied this initial burden, the nonmoving party has a reciprocal duty to set forth specific facts by the means listed in Civ.R. 56(C) showing that there is a genuine issue of material fact. *Id.*

## IV. Discussion

{¶ 10} R.C. 4123.01(C) defines an injury for purposes of workers' compensation. The statute "encompasses 'any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment.'" *Parrish v. Cavaliers Holding, LLC*, 8th Dist. Cuyahoga No. 106911, 2019-Ohio-89, ¶ 10, quoting R.C. 4123.01(C). Under Ohio law, a worker must show that "(1) the injury occurred 'in the course of employment,' and (2) the injury 'arises out of that employment.'" *Id.*, quoting *Ruckman v. Cubby Drilling, Inc.*, 81 Ohio St.3d 117, 121, 689 N.E.2d 917 (1998), citing *Fisher v. Mayfield*, 49 Ohio St.3d 275, 277, 551 N.E.2d 1271 (1990).

{¶ 11} In *Fisher*, the Ohio Supreme Court "recognized the undivided nature of this coverage formula, finding that the failure to satisfy both prongs precludes recovery under the Workers' Compensation Act." *Id.*, citing *Fisher* at 277. The court reiterated the long-standing adage that "workers' compensation statutes are to be liberally construed in favor of awarding benefits to the employee but clarified that

all elements of the formula must be met prior to the awarding of benefits." *Id.* at

¶ 10, citing *id.* at 277-278.

{¶ 12} For the first part of the analysis,

> The "in the course of" prong relates to the time, place, and circumstances of the injury. [*Fisher v. Mayfield*, 49 Ohio St.3d 275, 277, 551 N.E.2d 1271 (1990)]. This prong limits workers' compensation benefits to employees who sustain injuries while engaged in a required employment duty or activity consistent with their contract for hire and logically related to the employer's business. *Ruckman v. Cubby Drilling, Inc.*, 81 Ohio St.3d 117, 120, 689 N.E.2d 917 (1998).

*Friebel v. Visiting Nurse Assn. of Mid-Ohio,* 142 Ohio St.3d 425, 2014-Ohio-4531,

32 N.E.3d 413, ¶ 13.

{¶ 13} Secondly,

> The "arising out of" prong refers to the causal connection between the employment and the injury, and whether there is sufficient causal connection to satisfy this prong "'depends on the totality of the facts and circumstances surrounding the accident, including: (1) the proximity of the scene of the accident to the place of employment, (2) the degree of control the employer had over the scene of the accident, and (3) the benefit the employer received from the injured employee's presence at the scene of the accident.'" *Fisher*[, 49 Ohio St.3d] at 277, [551 N.E.2d 1271 (1990)], quoting *Lord v. Daugherty,* 66 Ohio St.2d 441, 423 N.E.2d 96 (1981), syllabus. This list of factors is not exhaustive, however, and an employee may fail to establish one or more of these three factors and still be able to establish the requisite causal connection. *Fisher* at 279, fn. 2; *Ruckman* at 122.

*Id.* at ¶ 14.

{¶ 14} It is also widely recognized that workers' compensation "cases are fact

specific, no one factor is controlling" and "[n]o one test or analysis can be said to

apply to each and every factual possibility." *Friebel* at ¶ 18. *Fisher*, 49 Ohio St.3d at

280, 551 N.E.2d 1271. The overarching consideration is that the statute must be

accorded a liberal construction in favor of awarding benefits.  R.C. 4123.95; *Fisher* at 278.

{¶ 15}  R.C. 4123.01(C) also lists exclusions from the definition of injury:

(1) Psychiatric conditions except where the claimant's psychiatric conditions have arisen from an injury or occupational disease sustained by that claimant or where the claimant's psychiatric conditions have arisen from sexual conduct in which the claimant was forced by threat of physical harm to engage or participate;

(2) Injury or disability caused primarily by the natural deterioration of tissue, an organ, or part of the body;

(3) Injury or disability incurred in voluntary participation in an employer-sponsored recreation or fitness activity if the employee signs a waiver of the employee's right to compensation or benefits under this chapter prior to engaging in the recreation or fitness activity;

(4) A condition that pre-existed an injury unless that pre-existing condition is substantially aggravated by the injury.  Such a substantial aggravation must be documented by objective diagnostic findings, objective clinical findings, or objective test results.  Subjective complaints may be evidence of such a substantial aggravation. However, subjective complaints without objective diagnostic findings, objective clinical findings, or objective test results are insufficient to substantiate a substantial aggravation.

{¶ 16} The day of the injury, Owens was assigned to transport pallets of delicatessen ("deli") products from the delivery truck to the lunch meat cart in the deli department.  Owens was "hustling" during the process to perform the task quickly.  (Tr. 18.)  At one point, Owens walked to the deli department and placed a box of cheese on the deli counter; as he rounded the deli counter corner to speak with his manager and coworkers to "socialize and * * * talk a[bout] a few things about the job," Owens felt a "pop" at the back of his foot.  (Tr. 19.)  Owens thought he hit

his heel, looked back, and did not see anything. "And I knew my Achilles had popped." *Id.*

{¶ 17} Owens hopped forward a few times and fell to the floor, lifted himself into a chair supplied by coworkers, and waited for an ambulance. Owens was transported to the Bedford University Hospitals emergency room where the injury was diagnosed as a ruptured Achilles tendon. Owens did not observe anything on the floor that posed a hazard or contributed to his injury, and the incident was recorded by a security camera.

{¶ 18} In Giant Eagle's motion for summary judgment, Giant Eagle argued it is undisputed that Owens failed to establish that his injury arose out of his employment because Owens's "mechanism of injury, merely walking, is one incidental to the general public at large and is not a result of a greater hazard related to his employment." Motion for summary judgment, p. 3. Giant Eagle attached an excerpt from Owens's deposition and an affidavit verifying the security video exhibit.

{¶ 19} Giant Eagle cites *Ashbrook v. Indus. Comm.*, 136 Ohio St. 115, 24 N.E.2d 33 (1939), for the premise that Owens must show "a causal connection between the injury sustained and the employment of the applicant either through the activities, the conditions or the environments of the employment in which the injured employee is engaged." *Id.* at 118. *Ashbrook* also provides that the workers' compensation fund "does not embrace risks and hazards which are similarly encountered by the general public, such as those of travel to and from places of employment over streets and highways." *Id.* "The clear purpose * * * is to provide

protection for workmen from the risks and hazards incident to their employment and to assure compensation for injuries sustained as the result of such risks and hazards." *Id.*

{¶ 20} We find that the facts in *Ashbrook* are distinguishable because they fall within what has developed as the coming-and-going rule for employees with a fixed employment situs. *See Friebel*, 142 Ohio St.3d 425, 2014-Ohio-4531, 32 N.E.3d 413, ¶ 16, citing *MTD Prods., Inc. v. Robatin*, 61 Ohio St.3d 66, 572 N.E.2d 661 (1991), syllabus; and *Ruckman*[, 81 Ohio St.3d] at 119-120[, 689 N.E.2d 917].

{¶ 21} The *Ashbrook* Court determined:

Where an employee, following the completion of his shift of work, leaves his place of employment in his own automobile and travels over a route and to a destination of his own selection for purposes determined by himself and, while so doing, is injured as a result of a collision with a streetcar, the fact that, without the authority, direction or knowledge of his employer, he contemplated the purchase of necessary batteries for his own flashlight used in the work upon which he was employed does not warrant a finding that his injury was sustained in the course of and arose out of his employment.

*Ashbrook*, 136 Ohio St. 115, 24 N.E.2d 33, syllabus paragraph three.

{¶ 22} The admittedly fact-specific workers' compensation scenarios have evolved since the 1939 opinion in *Ashbrook,* but the purpose and policy of the Act remains constant. Owens was not on break or otherwise away from the work premises. Owens was at his employment location stocking the meat and deli cart, and walked around the deli corner to address his manager and coworkers. The fact that Owens placed the cheese on the deli counter prior to his ankle injury and went

to speak with his manager and coworkers behind the deli counter does not place Owens's activities outside of the scope of employment.

{¶ 23} In addition, "[a]n employee is in the scope of his employment when performing, '* * * some required duty done directly or indirectly in the service of the employer * * *.'" *Rosado v. Cuyahoga Metro. Hous. Auth., Inc.*, 8th Dist. Cuyahoga No. 87922, 2007-Ohio-1164, ¶ 10, quoting *Indus. Comm. v. Ahern*, 119 Ohio St. 41, 162 N.E. 272 (1928), paragraphs two and three of the syllabus.

{¶ 24} "The employee need not be injured in the actual performance of his duties because he is in the course of his employment when he does things that 'are usually and reasonably incidental to the work of the employer.'" *Id.*, citing *Lemming v. Univ. of Cincinnati*, 41 Ohio App.3d 194, 534 N.E.2d 1226 (1987), quoting *Taylor v. Indus. Comm.*, 13 Ohio App. 262, 270, 1920 Ohio App. LEXIS 171 (June 19, 1920). "Therefore, when an employee is injured while, e.g., taking refreshments during a break, he may be entitled to benefits." *Id.*, citing *Carrick v. Riser Foods*, 115 Ohio App.3d 573, 576, 685 N.E.2d 1261 (8th Dist.1996), *Pilar v. Ohio Bur. of Workers' Comp.*, 82 Ohio App.3d 819, 613 N.E.2d 684 (8th Dist.1992).

{¶ 25} The trial court's summary determination granted judgment based on *Dailey v. AutoZone, Inc.*, 11th Dist. Trumbull No. 99-T-0146, 2000 Ohio App. LEXIS 4574 (Sept. 29, 2000), a case that advances what Owens labels as a "coincidental to employment" claim, does not exist in law. In *Dailey*, the employee "spent several hours unloading trucks and stocking store shelves," was next assigned to the auto parts counter, and shortly thereafter to the cash register. As Dailey

turned to hand a receipt to his manager who was standing about six feet away, he felt a "sharp pain in his lower back running down the back of his leg." *Id.* at 2. Dailey rested in the office then completed the last four hours of his shift. The next day Dailey sought medical attention and was diagnosed with a lumbar sprain.

{¶ 26} The appellate court affirmed the trial court's grant of summary judgment to the employer because Dailey could not demonstrate a causal connection between the injury and his employment. The court held that the "Workers' Compensation Act is not meant to impose a duty on an employer as an absolute insurer of the employee's safety. Instead, the Act is only intended to protect employees against risks and hazards incident to the performance of their duties." *Id.* at 7, citing *Phelps v. Positive Action Tool Co.*, 26 Ohio St.3d 142, 144, 497 N.E.2d 969 (1986).

{¶ 27} Dailey's injury did not manifest promptly and as acknowledged by the instant parties Dailey did not present medical expert testimony to demonstrate that the injury was work related. In fact, Dailey's treating physician advised that the injury was not covered by workers' compensation. Owens counters that Owens's injury manifested immediately and is documented by the emergency room evidence. Owens also argues that he has an expert witness to establish the relationship.

{¶ 28} In *Bahr v. Progressive Cas. Ins. Co.*, 8th Dist. Cuyahoga No. 92620, 2009-Ohio-6641, this court distinguished the *Dailey* injury as idiopathic. *See* R.C. 4123.01(C) that lists coverage exceptions for injuries that did not rise out of employment. In other words, Dailey was injured due to "circumstances particular

to an individual employee, rather than out of a risk related to the employment." *Id.* at ¶ 32.

> [T]he term "idiopathic" is defined as "peculiar to the individual." *Webster's Third New International Dictionary* (1986) 1123. For workers' compensation purposes, idiopathic refers to an employee's pre-existing physical weakness or disease which contributes to the accident. 1 Larson, The Law of Workmen's Compensation (1985) 3-308, Section 12.00.

*Miller v. Horizons Health Servs., L.L.C.,* 2017-Ohio-465, 84 N.E.3d 325, ¶ 19 (8th Dist.)*,* quoting *Waller v. Mayfield,* 37 Ohio St.3d 118, 524 N.E.2d 458 (1988), fn. 3. *See also Woodcox v. Bur. of Workers' Comp.*, Franklin C.P. No. 13CVD03-3425, 2014 Ohio Misc. LEXIS 11008, at 2 (Feb. 21, 2014), that cites *Dailey* for the premise that the employee's injury was idiopathic.

{¶ 29} Giant Eagle did not argue that the injury is idiopathic, but only that Owens was not injured in the course of his employment or due to a hazard in the workplace.

> Merely walking at the time of the actual injury, without being engaged in any activity that inures to the benefit of the Employer, is most certainly *not* a hazard incidental to [Owens's] employment. Owens's incident of having his ankle "pop" while merely walking, is one of daily living and puts him at no greater risk than the general public, and thus, outside the scope and purpose of the Workers' Compensation Law, as held in *Ashbrook*, *supra*.

Appellee's brief, p. 5.

{¶ 30} Giant Eagle also argues that once Owens placed the cheese on the counter and headed to "socialize" with coworkers, Owens was no longer acting within the scope of his employment. This raises the question of whether, if Owens took the cheese with him as he walked toward the coworkers, Giant Eagle would

concede that Owens was acting within the scope of employment? Even if the coworker socialization was deemed to be a personal relief break, "where an employee is injured during a personal relief break from work, a genuine issue of material fact may exist as to the sufficiency of the 'causal connection' between the employee's injury and his employment." *Dolby v. Gen. Motors Corp.*, 62 Ohio App.3d 68, 70, 574 N.E.2d 570 (8th Dist.1989).

{¶ 31} Finally, further to the question of whether the injury arose in the course of employment, we consider the time, place, and circumstances of the injury and whether the injury was received "while the employee was engaged in a duty required by the employer." *Fisher*, 49 Ohio St.3d 275, 277, 551 N.E.2d 1271.

{¶ 32} To determine the causal connection between the employment and the injury, we consider the "totality of the circumstances * * * including (1) the proximity of the scene of the accident to the place of employment; (2) the degree of control the employer had over the scene of the accident; and (3) the benefit the employer received from the injured employee's presence at the scene of the accident." *Id.*, citing *Lord v. Daugherty*, 66 Ohio St.2d 441, 423 N.E.2d 96 (1981), syllabus. "This list of factors is not exhaustive * * * and an employee may fail to establish one or more of these three factors and still be able to establish the requisite causal connection." *Friebel*, 142 Ohio St.3d 425, 2014-Ohio-4531, 32 N.E.3d 413, ¶ 14, citing *Fisher* at 279, fn. 2; *Ruckman*, 81 Ohio St.3d at 122, 689 N.E.2d 917.

{¶ 33} We also look to the video that provides a clear depiction of the area and events. Owens stated during deposition that he placed the cheese on top of the

deli counter and walked around the deli counter "to get into the back, you know, into the deli [area behind the counter]." Appellant's Depo., p. 19. "I walk fast all day because I am always hustling — I walked around the corner. My foot just went out." *Id.*

{¶ 34} The video begins as Owens, wearing a white employee jacket, entered the area behind the deli counter. Owens was moving quickly and appeared to speak briefly to the first worker whose back was turned to him as he passed. Two steps later, Owens's right heel appeared to slip inwards, and he began to hop on his right foot several feet past the second worker who was serving a customer. Owens dropped to the floor and was clearly in discomfort. The coworkers continued working and did not check on Owens until there was a brief lull in customer traffic. Owens pulled himself into the chair provided by a coworker approximately five minutes after the injury and was transported from the area by EMS personnel.

{¶ 35} The video also reveals the general condition of the floor area in front of and behind the deli counter. The incident occurred on February 1, 2020, and customers wore winter attire. Some customers and employees wore winter boots. A portion of the floor area in front of the deli counter that Owens rounded to enter the area behind the counter was clearly wet and reflects the interior lights. There were also what appeared to be several white pieces of paper of various sizes and textures on the floor behind the deli counter.

{¶ 36} It appears based on our review of the record that Owens was working at the store location at the time of the injury, Giant Eagle had control over the scene,

and Giant Eagle received a benefit from Owens's presence at the scene up to the point of injury. Owens's deposition testimony supports that he was injured on the job. Giant Eagle's video confirms Owens's account of the events.

{¶ 37} Owens rejects Giant Eagle's position and argues that a genuine issue of material fact exists as to whether Owens's injury is compensable under the Workers' Compensation Act. We agree.

## V. Conclusion

{¶ 38} Accordingly, we find that the assigned error has merit and Giant Eagle was not entitled to judgment as a matter of law. The judgment is therefore reversed and the cause is remanded for further proceedings.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

ANITA LASTER MAYS, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
MARY EILEEN KILBANE, J., CONCUR